**KUYKENDALL et al. v. TAYLOR et al.**

No. 11853.

Court of Civil Appeals of Texas. Dallas.
Dec. 7, 1935.

Rehearing Denied Jan. 11, 1936.

H. M. Wade, of Rockwall, Harry D. Page, of Dallas, and Homer Stimson, of Royse City, for appellants.

Mike Reinhardt, of Rockwall, for appellees.

JONES, Chief Justice.

A suit was filed in the county court of Rockwall county by Mrs. G. F. Taylor, joined by her husband, G. F. Taylor, against W. S. Kuykendall, to recover damages suffered by Mrs. Taylor because of the wrongful release of a vendor lien note, executed by J. M. Hagar to appellant, W. S. Kuykendall, as a second lien in part payment of 104 acres of land situated in Collin county. Kuykendall impleaded W. H. Adams as a party defendant and sought recovery against him for any amount that should be recovered against Kuykendall. In a trial before a jury, judgment was entered in favor of Mrs. Taylor for $501.53, with interest at the rate of 8 per cent. per annum from September 20, 1933, and a like judgment was entered in favor of Kuykendall against Adams. Both Kuykendall and Adams have appealed from this judgment. The parties will be designated by their respective names. The following are the necessary facts:

On September 2, 1921, Kuykendall was the·owner of a 104-acre tract of land situated in Collin county, Tex.; this land was incumbered by a valid deed of trust lien in the sum of $4,000 in favor of the John Hancock Mutual Life Insurance Company. On said date, Kuykendall conveyed the land to J. M. Hagar, who assumed the payment of the first lien of $4,000 and executed as a second lien a series of ten vendor lien notes, the first being for $577, and nine others, each for $500. It appears that the first of these series of notes matured on January 1, 1922, and that one note of the remaining nine matured on January 1st of each year thereafter, the last of this series of notes maturing January 1, 1932. On December 18, 1922,

J. M. Hagar conveyed this tract of land to appellant W. H. Adams, subject to the outstanding first lien of $4,000, and subject to the ten second lien notes in the aggregate sum of $5,077. These notes were all outstanding at the time of this purchase. The record does not disclose that Adams paid any other consideration.

On January 1, 1923, Kuykendall, for a valid consideration, sold to Mrs. Taylor notes Nos. 6 and 7 of this series of ten second lien notes. These notes matured respectively January 1, 1928, and January 1, 1929. There was no written transfer of these notes and liens by Kuykendall to Mrs. Taylor, but they were transferred only by Kuykendall's indorsement on each note and his delivery of them to Mrs. Taylor. Notes Nos. 1, 2, and 3 of the series of second lien notes were paid, and Adams, the then record owner of the land, requested Kuykendall, the record owner of the notes, to execute a release of the lien securing them. The release was prepared by Frank Bass, at the request of Adams, and executed by Kuykendall on December 17, 1925. This release, however, covered the entire series of ten second lien notes. Kuykendall did not read the release after it was prepared and handed to him by Adams, but assumed that it was only a release of the three notes that had been paid. This release was placed of record, and not long thereafter Adams, who owned an 80-acre tract of more valuable land, adjoining the 104 acres in question, secured from the John Hancock Mutual Life Insurance Company a loan on the combined tracts of land in the sum of $12,500, merging into such loan the first lien securing the original $4,000 first lien indebtedness. At the time the release was executed and recorded, the record ownership of the vendor lien notes was in Kuykendall, and when he by the release acknowledged payment of the notes and released the lien, the record showed a lien for only $4,000 against the 104 acres of land, and no lien in favor of the holder of any of the second lien notes. Mrs. Taylor, the owner of two of these second lien notes, knew nothing of the execution of the release until April 1933. Note No. 6, held by Mrs. Taylor, was paid to her by Adams after this release, and $100 on the principal paid on note No. 7, with the interest due thereon up to January 1, 1932.

In April, 1933, when Mrs. Taylor first made the discovery that note No. 7 had been released by Kuykendall, there was outstanding against the 104-acre tract and the 80-acre tract, a valid first lien in the sum of $12,500, and no lien in her favor for note No. 7. At the time Mrs. Taylor made the discovery, there was no equity in the land to be subjected to the payment of her note. There would have been an equity, to the amount of her note, if the release had not been wrongfully executed by Kuykendall. Mrs. Taylor could have caused the release to be set aside as between herself and Kuykendall, but this would not have affected the prior lien of the John Hancock Mutual Life Insurance Company, for such insurance company had no knowledge other than that shown by the record. A suit to set aside the release, therefore, would have accomplished nothing for her benefit.

Faced with such conditions, Mrs. Taylor instituted this suit as a tort action against Kuykendall to recover the damages she suffered by reason of his wrongful act in releasing a valid lien she held. On the theory that Adams was responsible for the mistake made in releasing the Taylor notes, Kuykendall caused Adams to be made a party defendant, and on proper allegations sought to recover whatever damages were awarded Mrs. Taylor over against Adams, as the one responsible for the wrong committed against Mrs. Taylor, and as the only person benefited by the release.

The case was submitted to the jury on special issues and the jury returned their verdict, finding that: (1) Mrs. Taylor was fraudulently deprived of her lien by reason of the release of the note in question by defendant Kuykendall; (2) $501.53 plus interest at 8 per cent. from date of suit will compensate Mrs. Taylor for her loss; (3) Mrs. Taylor could not have collected the note in question on January 1, 1929, by insistence and demand upon Adams; (4) the reasonable cash market value of the land in question on January 1, 1929, was $6,000; (5) the reasonable cash market value of the land in March, 1933, was

$4,000; (6) defendant Adams induced defendant Kuykendall to execute the release in question; (7) the defendant Adams knew that Kuykendall executed the release of the note introduced in evidence at the time of the execution of the release by Kuykendall.

These findings of the jury are supported by substantial evidence and are adopted as the findings of this court.

■ It is strenuously urged that the evidence does not support the finding of the jury that Adams knew that the note in question was released by Kuykendall. It is. true that the evidence of both Kuykendall and Adams would indicate strongly that the execution of the release was a mutual mistake, that Kuykendall believed only notes Nos. 1, 2, and 3 were released, that Adams believed only such notes were released. The release was delivered to Adams, an experienced business man of high standing, and also an experienced dealer in land. Not long after the release was secured, Adams applied for and secured a loan of $12,500, on the 104 acres and the adjoining 80-acre tract. In securing this loan, he necessarily dealt with the title to the land, and necessarily became acquainted with the liens against the land. These circumstances were sufficient to sustain the finding of the jury, and such finding is binding on this court, when supported by such evidence. It is true that Adams paid several of these notes, including the one to Mrs. Taylor, after this release was executed, and paid $100 on the note in suit, together with interest up to January 1, 1932. This, however, is not inconsistent with the finding of the jury, for the reason that a man of his experience would know the release was not binding on Mrs. Taylor. It may have been that if this court had the liberty of passing on the issue, its finding would have been different, but this court has no such liberty.

At the time of the trial, there was one $500 note outstanding, presumably in the hands of Kuykendall, the payee in the note. Kuykendall cannot complain if the entire equity in the land was consumed by the payment to Mrs. Taylor the damages she suffered by reason of his wrongful act and that there was no security left for the payment of his note.

■ It is urged that Mrs. Taylor's cause of action was barred by limitation, and the two and four-year statutes of limitation (Vernon's Ann.Civ.St. arts. 5526, 5520) are presented by the pleadings of the defendants. The undisputed evidence is that Mrs. Taylor did not discover that Kuykendall had released the entire series of notes in 1925 until in April, 1933. It is settled law in this state that, in a suit of this kind, limitation does not begin to run until the injured party has discovered the fraud perpetrated, or has knowledge of such facts that would put a reasonably prudent person on notice that such fraud had been perpetrated. The record is entirely bare of the existence of any such knowledge on the part of Mrs. Taylor. Note No. 6 had been paid long after the release had been executed, $100 of the principal and interest to January 1, 1932, had been paid. When she purchased the note, the record not only showed the existence of the note, but also showed its lien to be second only to the $4,000 life insurance company's lien. She had no cause to examine the deed records of Collin county, to find what may have been placed of record, after her purchase, and, under such circumstances, the constructive notice given by the recording of the release was not such notice that would begin the running of the statute of limitation against her cause of action.

■ Again, it is urged that the four-year statute of limitation against the note had expired and limitation on such note was complete after January 1, 1933, prior to the filing of the suit, and that, as the basis of her damages rested on the enforcibility of the note, her cause of action died with the note. We cannot sustain this contention. The note in question was one of a series of ten notes, and under article 5520, R.S., as amended by the 42nd Legislature, which amendment merely clarifies the terms of the statute, as it existed at that time, it is declared that: "Where a series of notes may be given or any note may be made payable in installments; or if any other instrument is executed which creates an obligation on the Vendee or Grantee of real estate to pay for the same in installments or partial payments, limitation shall not begin to run until the maturity date of said last note or installment." Acts 42nd

Legislature, Regular Session, c. 135, p. 231 (Vernon's Ann.Civ.St. art. 5520). This record shows conclusively that note No. 10 was not barred by limitation when this suit was filed.

█ The judgment in favor of Kuykendall over against Adams as authorized by the finding of the jury, and this court is not at liberty to set such finding aside. This is a tort action and, under such action, Mrs. Taylor did not have the right to recover the attorney's fee. The judgment of the lower court, however, can be reformed so as to deduct the attorney's fee of $45.59, and, as so reformed, it is the opinion of this court that the judgment should be affirmed, and it is so ordered.

Reformed and affirmed.